This court is now in session. Please be seated. Could the clerk call the next case, please? 3-13-07-53 People of the State of Illinois Apple Leaf v. Robert Hanson v. Michael Lyons of Towns v. Lucas Walker Mr. Walker, good afternoon. May it please the court, counsel, good afternoon. Your honors, my name is Lucas Walker with the State Appellate Defender's Office. I represent the defendant in this case, Mr. Michael Lyon. There's only one issue in this case, and that is that the trial court erred  and found that there was reasonable suspicion to suspect Mr. Lyon of criminal activities simply because he had pulled his vehicle into a driveway, allowed a police officer to pass in his vehicle, then pulled out of the driveway and continued on his way, and this all occurred at night on a street that had experienced prior burglaries. Our argument is that those facts are not sufficient to justify a Terry stop in this case. Terry stops, of course, are Fourth Amendment stops. They need to be reasonable. The officer needs to have reasonable, articulable suspicion that a crime has been or is about to be committed, and it's well established that when the facts used to justify a Terry stop describe a large category of presumably innocent travelers who are then subject to virtually random seizures, the balance tilts in favor of freedom from police interference. So here we look essentially to two cases. People v. Leggings is a Fourth District case from 2008, and People v. Smith, a Third District case from 2002, and we did fire a motion to cite that authority and also provided notice via telephone to opposing counsel last week. In People v. Leggings, officers observed two vehicles in a known high crime area, specifically in front of a known drug house on a block that had experienced murders and more within the last six months. The officers observed one vehicle pull up behind the other, then individuals got out from one vehicle and entered into the other vehicle. The officer testified based on his 12 years of experience that that indicates that there's a drug transaction taking place, so the officers ultimately stopped the vehicles, searched them, and found drugs. On appeal, the appellate court found there was no justified, no reasonable suspicion of criminal activity there because that common everyday conduct of individuals simply getting out of one vehicle into another could not be criminalized simply because it happened to occur in a high crime area. Now, we acknowledge that in this case, in that case it was 2.30 p.m., and in this case it was 12.30 in the morning. So we looked at People v. Smith, and in People v. Smith, this case took on a bit more similar factual scenario, and in that case, the defendant was observed walking in Joliet around 1.43 a.m. The officers knew this was a high crime area. The defendant had clenched his fist and put something in his pocket. So the officers approached the defendant, who then walked across the street and stood in front of a known drug house. The officers continued their approach, ultimately asked the defendant, so what are you doing here? The defendant said, I'm waiting on my cousin. Officers then said, well, what's in your pocket? And the defendant didn't answer, but instead backed away from the officers. He was then grabbed, ultimately arrested and searched, and they found drugs. The motion to suppress in that case was denied, but on appeal, this Court reversed that and reversed the conviction outright. And that's because, well, the State in that case made very similar arguments to what the State does in this case, and that is the lateness of the hour combined with the fact that there were known crimes in the area and the fact that the defendant made attempts to get away from the officer, although in this case it's not necessarily clear he was avoiding contact with the officer. This Court rejected all those arguments and found the lateness of the hour combined with the criminal nature of the area did not justify the Terry stop, where it found that putting something in one's pocket is not necessarily the hallmark of criminal activity. And it took on the State's argument that the State makes in this case as well, which is in that case the defendant merely walking away from officers was comparable to or equivalent to headlong flight as in Illinois v. Wardlow. And this Court said, no, that's not the case, and in one or two sentences made clear that that merited very little discussion because it wasn't comparable. In this case, we would argue that that same analysis should apply. The fact that it was 1230 in the morning combined with the fact that there had been prior burglaries in the area, which, by the way, we don't know exactly when those burglaries took place. At least in Leggian's they knew within the last six months there had been several crimes. So all of those things combined still don't justify the Terry stop, where all Mr. Lyons did was signal, turn into a residential driveway, pause, allow the officer vehicle to pass, pulled out of the driveway, and then continued on his way. We would also point out that although the State does argue this was comparable to headlong flight, frankly it was the opposite. Mr. Lyons really pulled over and stopped. He didn't flee from police. There was no squealing of tires. When he pulled into the residential driveway, he didn't exit the vehicle and run off. And when he pulled out and continued on his way, he actually went the same direction that the officer went. So until fleeing is defined as actually heading towards somebody, this certainly was not headlong flight. So based on Leggian's, based on Smith, we would argue that this court should reverse the denial of Mr. Lyons' motion to suppress below and reverse his conviction outright where, without the evidence derived from this unlawful stop, of course the State would not be able to prove the charged offense. Now, we also acknowledge in the State's brief they make an alternative argument, and that is the State argues, well, even if Mr. Lyons' conduct did not provide justification for a tariff stop based on pulling him out of the driveway, there was an air freshener, so that allowed him to be pulled over. On that, Your Honors, we would simply ask this court to defer to the trial court. The trial court repeatedly made clear in the record over and over again, I believe it was about three times, that this stop had nothing to do with anything hanging from Mr. Lyons' rearview mirror. And our argument is that being decided by the trial court indicates, of course, that the trial court found, or at least did not believe, that there was an air freshener justifying the stop. And we want to point out that the allegation was that there was an 8x8 air freshener hanging from the rearview mirror. It's very large. It's a dinner plate or a book, something a little bit smaller than a notebook piece of paper, hanging from one's rearview mirror. If the trial court saw that in the video, which the defense argued obviously wasn't visible in the video, if based on being there and observing witness testimony, only one witness testified, Officer Spencer, if the trial court believed that there was a 64 square inch placard, a giant air freshener, obviously the trial court would have said, at the very least, not only was this stop justified by this air freshener, but it was also justified through what the court found it was justified by. So we would ask this court simply to defer to the trial court there and not find that there was such a large air freshener, at least not one, of the 64 square inch variety justifying the Terry stop in this case. If there are no questions, thank you for your time. Thank you, Mr. Walker. Mr. Hanson, good afternoon. Good afternoon, Your Honor. May it please the court, counsel. My argument will really be quite brief. I'm happy to rely on what we said in our brief. Counsel is absolutely correct. He notified me plenty of time in advance of the additional authority he wanted to cite. Smith, I know you've now approved that. I have no objection. I'll just respond to it here. He was absolutely fair in everything he did with it. Our point is Smith is really quite distinguishable. Here the defendant was not merely walking around, as was the defendant Smith. Here he suddenly pulled into the driveway when the cop came behind him. Then he quickly pulled out as the officer passed. It's like he was saying both I live here and I don't live here. It's 1230 AM, talking after midnight. The officer ran a check to see that the defendant was not connected to this address, and I explain in detail in my brief how that's the inference from everything he said that he determined that. This was an area with numerous burglaries of recent time. He was no more specific than that, Your Honors, and I can't argue that he was. We don't claim there was flight by the defendant here, but rather a comparable act, though significantly distinguishable, evasive conduct as part of the calculus for reasonable suspicion. Pulling into the driveway just as soon, you know, pulling into the driveway itself, very little reasonable suspicion found, but doing it here just as the cop got behind him and then immediately pulling out as the police passed, police passed, with the other circumstances that are in my brief and that I've mentioned to you here, just the preceding moment or two, had to raise a reasonable suspicion in any sentient officer. The officer said he first ran the license plate check, and considering all of his testimony, he implicitly said it revealed no connection between the vehicle and the house. The standard here, Your Honors, and I'm probably just stating the obvious to you, is reasonable suspicion. That's a lesser standard than probable cause. The defendant makes a point in his brief that a burglary didn't happen here. Right, it didn't happen because we had a very diligent officer on the scene. The standard of reasonable suspicion, again, I'm telling you very little you don't already know, when articulable facts with reasonable inferences, and that's largely what we're hanging our hat on, reasonable inferences from them warrant a reasonably prudent officer to investigate further for criminal activity. That's the legends case, which I say in my brief, states the law wonderfully, it's just I distinguish it on its facts. Here, unlike in legends, the defendant reacted to the officer's presence. In legends, the defendant did not react to the officer's presence. It's that reaction that added to the calculus of reasonable suspicion here. Your Honors, that concludes my comments. I'm happy to rely on my brief, what I've said. Any questions, I'd be happy to address them. Thank you, Your Honors. Mr. Walker, any rebuttal? Very briefly, the defendant would just point out, or at least argue, that as far as the vehicle not belonging there, there's really nothing to substantiate that the vehicle did not belong there. And if the argument is, well, he didn't own the home, that wasn't clearly established, but assuming that he didn't own the home doesn't necessarily mean the vehicle didn't belong there. Again, we fall back on that standard of conduct that describes a large category of presumably innocent travelers. Any weekend, any day, any night, there's going to be people, just based on common everyday experience, that will briefly pull into a driveway of the home they don't own to turn around or to let another vehicle pass, things of that nature. And that sort of behavior, that sort of conduct when driving should not allow now, going forward, officers to pull people over and investigate them further. And as far as defendant reacting to the police officer as a distinguishing factor between this case and legends, again, that's purely speculative. It was not established during the testimony of Officer Spencer. He is the only witness that testified. Obviously, Officer Spencer cannot testify. He knows that Mr. Lyon was reacting to his presence. This was at nighttime. This was 1230 in the morning. There's not any testimony regarding the lighting on the street. For all we know, Mr. Lyon just simply knew there was a vehicle behind him of a certain distance. 1230 in the morning, he didn't feel comfortable having a vehicle behind him for whatever reason. Allowed it to pass and continued on his way. We would, again, argue that that does not rise to the level of reasonable, articulable suspicion that he has committed or was about to commit a crime. And so, again, we reiterate our request for relief here would be a reversal of the denial of the motion to suppress and a reversal of his conviction outright where, without the evidence derived from this unlawful stop, the state obviously would not be able to prove the charge of offense. Thank you, Your Honors. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for our panel, please. Mr. Hampton? We will stand in recess. Mr. Lasky?